## CHICAGO, INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY v. THRASHER.

[No. 5;177.   Filed March 10, 1905.]

1. RAILROADS.—*Person Near Track.*—*Whether Licensee.*—Where a night watchman, after signaling a railroad train to stop, goes across the track and notifies the guests at a hotel that the train is approaching, and then returns and stands at a point six feet from the track, on a pavement which has been used by the public for several years, and which was not in the exclusive use of the railroad company, he is not a licensee, but is there by lawful right.   p. 61.

2. PLEADING.—*Railroads.*—*Injury to Person Near Track.*—*Failure to Give Signals.*—Where the complaint shows that the defendant's train ran through a town at a high rate of speed, without any headlight, and giving no signals, but shows that plaintiff's injuries were not inflicted, by reason of such negligence, such allegations add nothing to the complaint.   p. 62.

3. RAILROADS.—*Injury to Person Near Track.*—Where a railroad company carried on its train an object which protruded laterally from such train, and in passing through a town at night such object struck and injured the plaintiff, who was standing six feet from defendant's track on a sidewalk used by the public in passing near defendant's station, the defendant is liable.   p. 62.

4. TRIAL.—*Instruction.*—*Negligence.*—*Wilful Injury.*—Where there is no allegation of wilful injury in the complaint, it is harmful error for the court to instruct, that if the plaintiff was a wrongdoer or trespasser he could not recover except on proof that his injuries were wilfully inflicted or were so recklessly inflicted as to warrant the inference of wilfulness.   p. 62.

5. SAME.— *Instruction.*— *Damages.*— *Interrogatories.*—An instruction in a suit for damages for personal injuries which refers the amount of damages to the jury without any express reference to what they might find from the evidence, can not be said to be harmless, even though the answers to the interrogatories show that the general verdict was based upon the particular negligence shown in the complaint.   p. 64.

From Carroll Circuit Court; *T. F. Palmer,* Judge.

Action by Woodson Thrasher against the Chicago, Indianapolis & Louisville Railway Company. From a judgment on a verdict for plaintiff for $700, defendant appeals. *Reversed.*

*E. C. Field, H. R. Kurrie* and *C. R. Pollard,* for appellant.

*Reynolds, Sills & Reynolds,* for appellee.

BLACK, J.—In that portion of the brief for the appellant in which it is sought to comply with the requirement of rule twenty-two of this court that the brief of appellant shall contain a short and clear statement disclosing the errors relied on for a reversal, the only supposed errors which it is sought to indicate, to which subsequent portions of the brief apply in conformity with other parts of the same rule, are the action of the court in overruling the appellant's demurrer to the appellee's amended complaint, and in overruling the appellant's motion for a new trial; and to such supposed errors we, therefore, will confine our attention.

In the amended complaint, after preliminary averments, it was alleged that November 29, 1902, the appellee was night-watchman in the town of Francisville; that on the west side of appellant's track there then was, and for a long period had been, a hotel, run for and used by the traveling public, and on the east side of the appellant's track in that town was the appellant's passenger and freight depot, and in front of the depot was a platform used by the appellant and by passengers alighting from and getting upon trains of the appellant; that before that date the appellee, in the night-time, notified persons stopping at the hotel who wished to go on any of the trains that would or did carry passengers from the depot, of the arrival of such trains; that on the night of that date there was a train going south on appellant's road due there at 9:40 o'clock; that on that night this train was late, and did not arrive at the station until about 12 o'clock; that appellee heard the train coming, and signalled it to stop at the station, and thereafter he went from the east side of the appellant's track to the west side, to notify persons at the hotel, who desired to go on the train, that it was coming; that he then returned

to the east side of the track, and stopped on a brick side-walk, which runs east and west through the town, and near the north side of said platform; that this brick sidewalk had been there for many years, used by the citizens of the town and by the public; "that the place where he stopped and where he was on said sidewalk when he received the injuries hereinafter complained of was about six feet east of the main track of said defendant's road at said point and near the north end of said platform, without any negligence, default, want of due care or wrong on his part, and where he had a right to be, and where the defendant had no right and did not occupy in operating its train;" that at that point the appellant had but one main track, over which its engines and trains passed, and over which said train passed that night; that while appellee was standing on the walk and at the place and as hereinbefore alleged, an engine and train of cars, conducted and managed by the appellant's servants and employes, passed over the appellant's main track, through the town, at a high rate of speed, having no headlight; that this train was known as the "owl," and carried freight and passengers; that appellant's employes in charge of this train, and while acting for the appellant and in line of their duty, knowingly, carelessly, unskilfully and negligently used, conducted, managed, and propelled said engine and train, in this: They had no headlight, they gave no signal of the approach of the train to the depot, they had on the engine, or in some way connected therewith, something which extended a distance of about six feet from the east side of the engine and over the east side of appellant's track, at the point where the appellee was standing at the time the train passed; that the same was not used in operating the engine; that appellee is unable to state what it was, as it was dark, and he was unable to see the same; that, by said carelessness, negligence and unskilfulness in controlling, managing and propelling the engine and train as herein alleged, the appellee was struck and knocked down

by whatever it was that was upon or attached to the engine and extended out a distance of six feet on the east side of the engine and appellant's track at the time and place appellee was standing as herein alleged, and the appellee was greatly injured, etc.

1. It is claimed that the complaint does not sufficiently show that it was the duty of the appellant to protect the appellee, in the place where he stood, from injury through negligence of the appellant, the appellee being, it is insisted, under the averments, in no better case than that of a mere licensee at the time and place of the injury, reference being made in argument to decisions involving injuries to persons present as mere licensees upon premises of defendants. It must be said that the averménts of the complaint in this as well as in some other respects are meager; yet there seems to be enough to indicate that the appellee was not in a place belonging exclusively to appellant. He was pursuing his occupation, which had some reference to the arrival of the trains of the appellant, and to the convenience of its passengers. The place was in the immediate neighborhood of the platform used in connection with the depot by passengers alighting from or getting upon the trains. He was standing upon a brick sidewalk which ran through the town, and which had been there for many years, and which was used by the citizens of the town and by the public, the place where he stood being about six feet from the railroad track, and near the north end of the platform for passengers. Without reference to any averments which may be regarded as statements of conclusions of law, we think it was made to appear that the appellee was in a place which did not belong to the appellant exclusively, and which was not occupied by the appellant in operating its trains, and which members of the public might lawfully use and occupy for their own lawful purposes, which might be promoted by their being there. While not within or a part of the appellant's depot, it was a place at which persons going

to or from the depot, as well as the public generally, might be rightfully, without special invitation or permission or license from the appellant having exclusive right only to the operation of its locomotives and trains on its neighboring track in such ordinary manner as not to endanger, through its negligence, persons occupying the sidewalk with lawful intent, consistent with such use of the railway. It was not necessary to make any averments for the purpose merely of showing want of contributory fault.

2.   It is further contended that the averments did not contain any sufficient showing of negligence on the part of the appellant. We are disposed to agree with counsel for the appellant in their claim that the averments of negligence in having no headlight and giving no signal adds nothing of importance to the complaint. It does not sufficiently appear that such negligence caused the injury, or that it would not have occurred but for such negligence.

3.   But concerning the object protruding laterally from the engine, which, it is said, was not used in operating the engine, but which appellee was unable particularly to describe, because it was dark and he could not see it, it is averred that in this respect the appellant's servants in charge of the train, and while acting for the appellant and in the line of their duty, knowingly, carelessly, unskilfully and negligently used, conducted, managed and propelled the engine and train and that by this carelessness, negligence and unskilfulness the appellee was struck and knocked down by this protruding object, etc. As a matter of pleading, there was, we think, a sufficient showing of negligence of the appellant and of injury to the appellee of which such negligence was the proximate cause.

4.   The court, in an instruction numbered ten given on its own motion, told the jury that "if the plaintiff is a wrongdoer or a trespasser, or is in the enjoyment of a naked license for his own convenience, without any invitation, express or implied, from the owner of the premises, he can not

maintain an action for an injury, without averring and proving that the injury was wilfully inflicted, or that it was caused by negligence so gross as to authorize an inference of wilfulness. If you find from the evidence that the plaintiff, at the time he received the injury complained of, was in a position where he had a right to be, and the defendant was in a position it had a right to be, to entitle the plaintiff to recover, he is only bound to show that the injury was occasioned by the negligence of the defendant, and that he exercised ordinary care to avoid it." This instruction was adapted to mislead or to confuse the jury. There was no issue involving the question of the infliction of wilful injury. The only issue was one involving negligence alone. No matter how gross the negligence shown in evidence, it could not, in this case, be treated as establishing a cause of action against the appellant for a wilful injury, or authorize, for the purposes of this case, an inference of wilfulness. It is true that the court employed the words "averring and proving," etc., and that there was no averment of wilfulness in the complaint; but the court, after adverting to facts, the proof of which would prevent any recovery by the plaintiff, instead of plainly so informing the jury, told the jury that he could not maintain an action without averring and proving that the injury was wilfully inflicted, or that it was caused by negligence so gross as to authorize any inference of wilfulness. By "averring and proving" that the injury was caused by negligence, the appellee could not have recovered under the circumstances predicated in the instruction; and the jury was authorized to infer that, if such predicated facts were proved to be true, the plaintiff might recover if the pleading and the evidence showed facts constituting negligence so gross as to authorize an inference of wilfulness. The complaint showed that some object by which the appellee was struck protruded a number of feet from the side of the engine. If the jury found that this was literally true, and regarded it, under the circumstances

pleaded and proved, as negligence so gross as to authorize an inference of wilfulness, they possibly might have supposed themselves warranted, by this instruction, in finding for the plaintiff, though he were a wrongdoer or a trespasser, etc. At least, there was no occasion for presenting the subject of a wilful injury to the jury, and to do so in the involved manner of the instruction was adapted to divert the attention of the jury from the real issue, and to entangle their ideas. In the subsequent portion of the instruction, as above quoted, the court told the jury that under the facts there predicated, to entitle the plaintiff to, recover, he was "only bound to show that the injury was occasioned by the negligence of the defendant," without expressly limiting the negligence to that averred in the complaint. This statement was inaccurate.

5. If it may properly be said that the answers to interrogatories forbid the supposition that the jury may have found the appellant to have been a wrongdoer, a trespasser, or a mere licensee, and that these answers show that the general verdict was based upon the particular negligence shown in the complaint, and if it ought, therefore, to be considered that this instruction was not harmful, yet this can not be certainly concluded with reference to another instruction (numbered nine), given at the request of the appellee, which is as follows: "If you find, under the evidence and rules of law I have given you, that the plaintiff is entitled to recover, it will be your duty to assess the amount of damages which, in your judgment, he should recover. In estimating this amount you may take into consideration expenses actually incurred, loss of time occasioned by the immediate effect of the injuries, and physical and mental suffering caused by the injuries. And he will be entitled to recover for any permanent reduction of his power to earn money by reason of his injuries; and the amount assessed should be such a sum as, in your judgment, will fully compensate him for the injuries or any of them thus

sustained, the amount not to exceed the amount claimed in plaintiff's complaint." This instruction refers the amount to the judgment of the jury without any express reference to what they might find from the evidence, and there was no other instruction relating to the assessment of damages. We have no means of determining with desirable certainty that this erroneous instruction was entirely harmless. The appellant was entitled to greater accuracy.

There were other faults in the instructions given indicative of want of due care in their preparation, faults which, perhaps, will not occur upon another trial of the cause, and which do not seem to demand further discussion here.

Judgment reversed, and cause remanded for a new trial.